UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN ANDRADE, JR., Booking #1276875,<br><br>         Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.<br><br>         Defendants. | Civil No. 14cv1330 GPC (BGS)<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE: GRANTING MOTION TO DISMISS OF DEFENDANT**<br><br>**[ECF No. 16.]** |

## I. Introduction

  Plaintiff Franklin Andrade, Jr. ("Andrade"), currently incarcerated at the George Bailey Detention Center, is proceeding in pro se and *in forma pauperis* ("IFP") in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Before the Court are Defendants, the County of San Diego (also erroneously sued as San Diego County Board of Supervisors, San Diego County Jail Director of Health Services, Facility Administrator of George Bailey Detention) (hereinafter "the County") and Mike Barletta's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(6). [ECF No. 16.]  After considering the briefing and for the reasons stated below, **IT IS RECOMMENDED** that the motion to dismiss be **GRANTED**.

## II.    Factual Background[1]

Plaintiff, Franklin Andrade, is an inmate at George Bailey Detention Facility. Andrade alleges in his Second Amended Complaint that at about six months prior to his incarceration, he was prescribed the hydrocodone medication "Norco" as a pain reliever. (ECF No. 9 at 6.) Andrade suffers from chronic pain on his right side due to an acute ligament severance of the right shoulder and bicep. (*Id.* at 4.) Andrade states that his prior physician had fully informed him of the benefits and harms of Norco, and Andrade did not suffer any ill effects from taking Norco. (*Id.* at 6.)

In October 2013, Andrade met with an unnamed female physician at the George Bailey Detention Facility and was told that he could not continue receiving Norco, the medication he was taking before he entered the facility. (*Id.* at 4.)  Instead, the doctor prescribed another medication that Andrade was not familiar with, called "Roxycodone." (*Id.* at 5.) Andrade states that the doctor did not inform him of the side effects of Roxycodone, or that it could cause an opioid dependency. (*Id.* at 4.) Andrade contends that he did not receive "informed consent" in violation of San Diego County Jail's "own guidelines and policies set forth in the Title 15 (minimum jail standards) § 1214." (*Id.* at 5.)

After two to three weeks of taking Roxycodone, Andrade found that it provided only short-term relief. (*Id.* at 4.) Andrade complained that the medication was only effective for four hours after ingestion, and that the medication stops working after midnight. As a result, Andrade claims he would be in pain until 9:30 am. (*Id.* at 9.) Due to Andrade's complaints, an unnamed attending physician increased Andrade's medication dosage to three times daily, distributed at 9 am, 1 pm, and 7:30 pm. (*Id.* at 4-8.) Andrade requested that the 1:00 pm distribution time be moved to 2:30 am, but his request was denied. (*Id.* at 9.)

On January 19, 2014, Andrade alleges that unidentified nurses in the housing unit

---

[1] These factual allegations are summarized from Plaintiff's Second Amended Complaint (ECF No. 9.)  When citing to a page from a particular document, this Court will refer to page numbers assigned by the Court's Electronic Case Management docketing system.

to which he was assigned stopped dispensing medication to him because they suspected him of drug abuse. (*Id*. at 8.) Andrade alleges that "even though Plaintiff was not a heroin user suffering heroin withdraws, morphine based and opiod [sic] based products are in a similar family of narcotics [as Roxycodone]"; therefore "medical staff failed to follow their own guidelines concerning [the inmate] detoxification treatment policy" because they stopped administering Roxycodone without warning and failed to develop a detoxification program such as "weaning" or to transfer him to a licensed medical facility under Title 15, (minimum jail standards) § 1213. (*Id*. at 7.)

From January 19, 2014 to January 20, 2014, Andrade submitted written and verbal complaints to alert prison staff that once the Roxycodone medication was stopped (on January 19, 2014), he began to feel severely ill. (*Id*. at 8.) On January 21, 2014, Andrade woke up sick, was unable to eat breakfast, had coughs and sweats, and had chills upon standing up. (*Id*.) He then blacked-out, fell backwards, and suffered a concussion and contusion to the back of his head. (*Id*.) Andrade's head wound was closed with nine stitches, and he was admitted to the UCSD hospital for three days. (*Id*. at 8-10.)

On January 28, 2014, Andrade was transferred from the Medical Unit at George Bailey Detention Facility to General Population. (*Id*. at 10.) At 9:00 am, Andrade lined up to receive medication and he was given a pre-measured dosage of a red liquid. (*Id*.) Due to its similarities in appearance to Robitussin cough syrup, which Andrade had been previously prescribed, he mistook the red liquid for cough syrup and swallowed it. (*Id*.) The liquid, later discovered by Andrade to be an antiseptic called "Hibicleanse," burned his throat and caused him to vomit. (*Id*. at 11-13.) Andrade was escorted to a medical unit and placed into a holding cell for five hours, and was told by the attending nurse to keep vomiting. (*Id*. at 12.) Andrade stated that no medical staff remained to supervise, and he was later escorted back to General Population by a custody officer. (*Id*. at 12.)

On January 29, 2014, Andrade was escorted into an examination room for a follow-up examination with the attending physician. (*Id*. at 12.) Andrade alleges that the nurse who took his vitals was amused by his sickness and situation, made comments

about how the Hibicleanse tasted, and made Andrade feel that he "made the stupid decision of injuring [himself]." (*Id.* at 12-13.) Andrade further alleges that the attending physician also added joking remarks and asked him demeaning questions. (*Id.* at 13.) When Andrade asked "what's so "explentive" (sic) funny?", the attending physician told the custody sheriff to take Andrade back to his cell without further treatment. (*Id.* at 13.) Andrade stated that, at that moment, he was still suffering from the burning sensation in his throat, unable to eat or swallow without pain, and was still nauseous and suffering from the effects of the concussion. (*Id.* at 13.)

### III.  Procedural History

On May 29, 2014, Andrade filed his original Complaint in this action which the Court dismissed on June 9, 2014 for failure to state a claim. The Honorable Gonzalo P. Curiel explained:

> First, to the extent Plaintiff alleges that the "San Diego County Sheriff's Department," and the "San Diego Sheriff's Department Medical Service" have violated his constitutional rights, his Complaint fails to state a claim because these entities are not "persons" subject to suit under § 1983. Neither a local law enforcement department (like the San Diego County Sheriff's Office), a jail (like the San Diego County Jail), or a state agency (like the California Department of Corrections), are proper defendants under § 1983. *See Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality.") (citation omitted); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993) ("Section 1983 imposes liability on any 'person' who violates someone's constitutional rights 'under color of law.' Cook County Jail is not a 'person.'");
>
> While the County of San Diego *itself* may be considered a "person" and therefore, a proper defendant under § 1983, *see Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Hammond v. County of Madera*, 859 F.2d 797, 801 (9th Cir. 1988), Plaintiff has not named the County as a Defendant. Moreover, as a municipality, the County *may* be held liable under § 1983–but only where the Plaintiff alleges facts to show that a constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the County, or a "final decision maker" for the County. *Monell*, 436 U.S. at 690; *Board of the County Commissioners v. Brown*, 520 U.S. 397, 402-04 (1997); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995). In other words, "respondeat superior and vicarious liability are not cognizable theories of recovery against a municipality." *Miranda v. Clark County, Nevada*, 279 F.3d 1102, 1109-10 (9th Cir. 2002). "Instead, a *Monell* claim exists only where the alleged constitutional deprivation was inflicted in 'execution of a government's policy or custom.'" *Id.* (quoting *Monell*, 436 U.S. at 694).
>
> As currently pleaded, Plaintiff's Complaint fails to state a claim under 28 U.S.C.

> § 1915A(b) because he has failed to allege any facts which "might plausibly suggest" that either the County itself, or any *individual* County employee (a "person"), like Sheriff Gore, violated his constitutional rights. *See Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)'s pleading standards to *Monell* claims); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (42 U.S.C. § 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of plaintiff's constitutionally protected rights).

[ECF No. 3 at pp. 3-4.]

Andrade was given leave to file a First Amended Complaint. On July 8, 2014, he filed a First Amended Complaint which was again dismissed by the Court on August 6, 2014 for failure to state a claim. The District Court stated in its order:

> As currently pleaded, Plaintiff's First Amended Complaint fails to state a claim under 28 U.S.C. § 1915A(b) because he has failed to allege any facts which "might plausibly suggest" that the County violated his constitutional rights. *See Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)'s pleading standards to *Monell* claims); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (42 U.S.C. § 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of plaintiff's constitutionally protected rights). Here, there are no allegations that any individual Defendant was acting in accordance with a County policy, procedure or custom. *Monell*, 436 U.S. at 690.
>
> Plaintiff does allege that unnamed medical staff refused to provide him with medication he was receiving before he was incarcerated. Where an inmate's claim is one of inadequate medical care, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *Id.* at 1059-60. By establishing the existence of a serious medical need, an inmate satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).
>
> In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with a prescribed course of medical treatment, or it may be shown by the way in which prison medical officials provide necessary care. *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a inmate's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980)

>   (citing *Estelle*, 429 U.S. at 105-06). *See also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).
>
>   Here, Plaintiff only alleges facts that show a difference of opinion between himself and unnamed medical staff regarding the course of his medical treatment. Prior to his incarceration, Plaintiff received a medication that the medical jail staff informed him they could not provide. (*See* FAC at 3-4.) Instead, Plaintiff was prescribed a different pain medication. (*Id.* at 4.) A mere difference of opinion between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).
>
>   Plaintiff also alleges that he was mistakenly given the wrong medication that was "pre-made by the R.N. or LVN who delivered medication to each of the housing units." (FAC at 5.) Plaintiff claims that this medication was the same "look, texture and container" as the medication he was supposed to have received. (*Id.*) As a result of taking the wrong medication, Plaintiff claims he became ill. (*Id.*) However, inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Toguchi*, 391 F.3d at 1060.
>
>   To the extent that Plaintiff claims he was left alone in his cell after becoming ill and "laughed at by medical staff," he may have a deliberate indifference to a serious medical need claim. However, the Court cannot direct service of this claim at this time because Plaintiff's pleading is completely devoid of any description or identifying factors necessary to effect service on an individual defendant. Moreover, Plaintiff has not named any individuals as Defendants in this matter. Thus, if Plaintiff wishes to proceed with this claim, he must file an amended pleading that provides an adequate description of these individuals whom he claims were deliberately indifferent to his serious medical needs. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant.")."

[ECF No. 5 at pp. 2-6.]

On October 27, 2014, Andrade filed a Second Amended Complaint. Plaintiff contends that Defendants violated his constitutional rights by acting with deliberate indifference to his withdrawal from Roxycodone and to his ingestion of "Hibicleanse". [ECF No. 9.] Defendants filed a motion to dismiss on March 30, 2015. [ECF No. 16.]

**IV.   Defendants' Motion to Dismiss Plaintiff's Complaint**

Defendants seek dismissal of Andrade's Second Amended Complaint ("SAC") pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that: (1) Andrade fails to state a claim against Defendant Mike Barletta, who is alleged to be the "director of the Health Services Authority" (ECF No. 9 at 2), because the SAC states no facts demonstrating Barletta's knowledge of, or involvement with, Andrade's condition or injury; (2) Andrade fails to

state a claim for deliberate indifference against the County because he has not shown the failure to adequately respond to his withdrawal symptoms or to his ingestion of "Hibicleanse"; and (3) Andrade fails to state a claim under California State law because the County is immune from suit for injuries to prisoners under California Government Code § 844.6 and §845.6   [ECF No. 16-1.]

### A.   FED.R.CIV.P. 12(b)(6) Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation.").  "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

In addition, claims asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972); *Erickson*, 551 U.S. at 94. Because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings, [courts] continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

### B. Deliberate Indifference to Serious Medical Needs

Andrade alleges that he was a pretrial detainee at the time the Roxycodone was dispensed to him, and therefore, refers to the Fourteenth Amendment as the basis for his deliberate indifference claim. [ECF No. 9 at 8.] Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's prohibition of cruel and unusual punishment, applies to pretrial detainees, *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979), courts in the Ninth Circuit apply the same standards in both cases. *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (applying Eighth Amendment deliberate indifference standard to medical care claims raised by estate of suicidal pretrial detainee); *see also Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir 2003) (applying Eighth Amendment deliberate indifference standard to diabetic pretrial detainee's claims of inadequate medical treatment).

To state a deliberate indifference claim, Plaintiff must show a "serious medical need" such that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary or wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97 (1976). Defendants' motion to dismiss "assumes" Plaintiff could meet the first element of deliberate indifference; existence of a serious medical need. [ECF No. 16-1 at 4:25.]

therefore, the Court need not address this requirement.

As to the second element, a prison official acts in a deliberately indifferent manner when that official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff must include in his pleading enough factual content to show that each Defendant he seeks to hold liable acted with "deliberate indifference" to his needs. *McGuckin*, 974 F.2d at 1060; *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "This second prong–defendant's response to the need was deliberately indifferent–is satisfied by showing (a) a purposeful act or failure to respond to [the] prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096.

"The indifference to [a prisoner's] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). For example, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995).

### 1. Defendant Mike Barletta

Defendant Barletta argues for dismissal on the grounds that there are no factual allegations against him showing a cognizable claim for deliberate indifference. The allegations in the SAC against Defendant Barletta, in their entirety, are as follows:

> "Barletta...is employed as a Director of Health Services Authority... this defendant ... flagrantly [sic] disregard of State law and San Diego County law and regulations, regarding "informed consent" of "Legend Drugs", policy. Improperly supervising custodial medical staff."

[ECF No. 9 at 2.]

A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986).

The Second Amended Complaint fails to identify any acts showing Defendant Barletta knew of, and thereafter affirmatively disregarded, an excessive risk to Andrade's health or safety. Andrade conclusorily alleges Barletta: "flagrantly (sic) disregard of State law and San Diego County law and regulations, regarding "informed consent" of "Legend Drugs", policy - improperly supervising custodial medical staff." This general allegation, however, fails to state any facts from which the Court could infer that Barletta was personally involved or connected in some way to the decision to not give informed consent, stop providing Roxycodone or to the administering of Hibicleanse to Andrade. *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir 2004); *Resendiz v. County of Monterey*, 2015 WL 4040439 *4 (N.D. Cal. 2015) (finding the "bare" allegation that "Defendants fail[ed] to train, supervise and/or promulgate appropriate policies and procedures in order to prevent harm" did not state facts that would allow the Court to draw a reasonable inference of liability.)

Andrade also asserts in his SAC that he is suing Defendant Barletta in his "official capacity" as supervisor/Director of Health Services Authority. However, there is no *respondeat superior* liability under 42 U.S.C. § 1983. *Palmer v. Sanderson,* 9 F.3d 1433, 1437-38 (9th Cir. 1993). Therefore, any defendant against whom the complaint alleges only claims based on *respondeat superior* or vicarious liability, must be dismissed.

*Monell*, 436 U.S. at 691.  To avoid the *respondeat superior* bar, the plaintiff must allege personal acts by the defendant which have a direct causal connection to the constitutional violation at issue.  *Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986); *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986).  With respect to supervisors in particular, a claim may be stated where there exists: "(1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202 (9th Cir.2011).  This causal connection may be shown by alleging facts demonstrating the supervisor knew of an unconstitutional practice coupled with ratification or acquiescence. *Chavez v. U.S.*, 683 F.3d 1102, 1110-1111 (9th Cir. 2012).

As this Court explained *supra*, the SAC does not provide any facts showing Defendant Barletta was aware of: (1) the unidentified physician or medical staff's failure to give informed consent before switching Andrade's medicine; (2) the unnamed nurses' decision to stop Andrade's usage of Roxycodone without weaning or transfer; or (3) the erroneous administering of Hibicleanse to Andrade by unidentified medical staff.  Nor does the SAC allege any facts demonstrating Barletta in some way directed or sanctioned these staff actions, which Andrade claims were deliberately indifferent to his medical needs.  Therefore, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for failing to state a claim against Mike Barletta pursuant to FED.R.CIV.P. 12(b)(6) be **GRANTED**.

### 2. The County of San Diego

Andrade also asserts a claim of deliberate indifference against the County of San Diego under the theory of municipal liability set forth in *Monell v. New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.ed.2d 611 (1978).   In *Monell*, the Supreme Court held municipalities can be held liable under section 1983 for deprivations of constitutional rights resulting from their formal policies or customs.  *Id.* at 691-93.  Andrade must, therefore, show that there was a constitutional violation "caused by an official policy or custom" of the County.  *See Tsao v. Desert Place, Inc.*, 698 F.3d 1128,

1138-39 (9th Cir. 2012).

More specifically, to state a § 1983 claim against a local government under *Monell*, a plaintiff must show: (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy is the "moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).  "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury," and the plaintiff must establish "that the injury would have been avoided had proper policies been implemented." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006).

Andrade appears to allege that there is a basis for *Monell* liability because: (1) "medical staff violated their own guidelines and policies set forth in the Title 15 (minimum jail standards) § 1214"[2] by failing to give Andrade "informed consent" before prescribing Roxycodone; and (2) "medical staff failed to follow their own guidelines concerning [the inmate] detoxification policy [under] Title 15, (minimum jail standards) § 1213"[3] when, after suspecting him of Roxycodone abuse, they abruptly stopped distribution of the medication and did not develop a detoxification program such as "weaning" or transfer him to a licensed medical facility better equipped to handle

---

[2] Section 1214 of the Title 15 Regulations states: "Informed Consent.  The health authority shall set forth in writing a plan for informed consent of inmates in a language understood by the inmate. Except for emergency treatment, as defined in Business and Professions Code Section 2397 and Title 15, Section 1217, all examinations, treatments and procedures affected by informed consent standards in the community are likewise observed for inmate care. In the case of minors, or conservatees, the informed consent of parent, guardian or legal custodian applies where required by law. Any inmate who has not been adjudicated to be incompetent may refuse non-emergency medical and mental health care. Absent informed consent in non-emergency situations, a court order is required before involuntary medical treatment can be administered to an inmate."

[3] Section 1213 of the Title 15 Regulations states: "Detoxification Treatment. The responsible physician shall develop written medical policies on detoxification which shall include a statement as to whether detoxification will be provided within the facility or require transfer to a licensed medical facility. The facility detoxification protocol shall include procedures and symptoms necessitating immediate transfer to a hospital or other medical facility. Facilities without medically licensed personnel in attendance shall not retain inmates undergoing withdrawal reactions judged or defined in policy, by the responsible physician, as not being readily controllable with available medical treatment. Such facilities shall arrange for immediate transfer to an appropriate medical facility."

detoxification.[4] (ECF No. 9. at 4-7.)

As to the alleged failure of medical staff to provide Andrade with informed consent prior to taking Roxycodone, the SAC fails to state a claim because Andrade's allegations do not state facts showing execution of an official policy is responsible for his injuries. *Monnell*, 436 U.S. at 691-92. Instead, Andrade has alleged throughout the SAC that unnamed and unidentified doctors, nurses and medical staff did not follow the County's informed consent policy. Andrade's allegations demonstrate he takes issue not with the policy, but with the care provided by medical staff. Nevertheless, despite being advised in two prior court opinions to name or identify the persons whom he claims were deliberately indifferent to his serious medical needs, Andrade has failed to name any individuals on the medical staff.[5] Because members of the medical staff, not the informed consent policy, are alleged to be the moving force behind Andrade's injury, no municipal liability on the party of the County has been stated. Moreover, Andrade states no facts in the SAC alleging that if he had been given informed consent, his injury would have been avoided. To the contrary, in the SAC Andrade alleges that upon taking Roxycodone, he learned from other inmates that it was a "replacement medicine for

---

[4] Andrade does not allege a connection between these policies and his accidental ingestion of hibicleanse at a later time.

[5] Judge Curiel explained in his August 6, 2014 Order: "[T]he Court cannot direct service of this claim at this time because Plaintiff's pleading is completely devoid of any description or identifying factors necessary to effect service on an individual defendant. Moreover, Plaintiff has not named any individuals as Defendants in this matter. Thus, if Plaintiff wishes to proceed with this claim, he must file an amended pleading that provides an adequate description of these individuals whom he claims were deliberately indifferent to his serious medical needs. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant."). [ECF No. 5 at 5:5-13.] Accordingly, Andrade's naming of defendants "George Bailey detention medical staff" and "Administrator of George Bailey detention facility" in the SAC are inadequate as found in the Court's prior orders. *See also* June 9, 2014 Order finding: "As currently pleaded, Plaintiff's Complaint fails to state a claim under 28 U.S.C. § 1915A(b) because he has failed to allege any facts which "might plausibly suggest" that ... any *individual* County employee (a "person"), like Sheriff Gore, violated his constitutional rights. *See Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)'s pleading standards to *Monell* claims); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (42 U.S.C. § 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of plaintiff's constitutionally protected rights)." ECF No. 3 at 4:4-12.]

Oxycodone" and continued to use it from October of 2013 to January 19, 2014. [ECF No. 9 at pp. 6 and 9.] There are no facts alleged in the SAC that would allow the court to draw a reasonable inference that implementation of the County's informed consent policy is responsible for the injuries alleged. Therefore, **IT IS RECOMMENDED** that the County's Motion to Dismiss for failure to state a claim of municipal liability with respect to the informed consent policy be **GRANTED.**

Turning to Andrade's allegation that the medical staff failed to follow their own guidelines concerning inmate detoxification policy, the SAC again fails to state a claim. Specifically, Andrade's allegations do not state facts that would allow the court to draw a reasonable inference that execution of the County's detoxification policy is responsible for his injuries. *Monnell*, 436 U.S. at 691-92. Throughout the SAC, Andrade alleges "jail medical staff" <u>failed to follow</u> the detoxification policy. [*See* ECF No. 9 at p. 7 ("jail medical staff failed to follow their own guidelines..."), p. 14 ("medical staff ... has acted as if it is above the laws that their own county enforces, guidelines that are set in minimal jail standards (Title 15)...."); p. 14 ("medical staff should not have... stopped Plaintiffs addiction medication without 'weaning'...").] The focus of the SAC is on the actions of staff which Andrade alleges deviated from the policy in place.[6] Consequently, a claim for municipal liability has not been stated, because as explained in the Court's discussion of *Monell supra*, a government entity is liable only for injury stemming from a policy of that entity, not from an individual aberration or isolated act. *Monnell*, 436 U.S. at 690. Here, the SAC contains no allegations that jail medical staff were acting in accordance with policy. **IT IS THEREFORE RECOMMENDED** that the County's Motion to Dismiss Plaintiff's Second Amended Complaint for failing to state a claim of municipal liability against the County as to the application of its "detoxification" policy be **GRANTED**.

### C. Failure to Provide Medical Care under the California Government Code

---

[6]Because Defendants' motion to dismiss utterly fails to discuss the applicability of the policies identified by Andrade, the Court assumes, without deciding, for the purposes of this motion only that the informed consent and inmate detoxification policies are in force at the George Bailey Detention Center.

The County contends that to the extent Plaintiff is attempting to plead a state law claim for injury caused by an alleged failure to furnish medical care to a prisoner, such a claim must be denied because public entities are immune from suit under California Government Code §§ 844.6 and 845.6. [ECF No. 16 at 16 at 6:7-20.] California Government Code § 844.6(a)(1) provides, "notwithstanding any other provision of this part, ....a public entity is not liable for (1) An injury proximately caused by any prisoner.; (2) An injury to any prisoner." Cal. Gov. Code §844.6. An exception to the immunity from suit exists pursuant to California Government Code § 845.6 which states:

> "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

Cal. Gov. Code §845.6.

Section 845.6, which covers the need for immediate medical care, does not apply to generalized failures to provide medication or treatment. *Nelson v. California*, 139 Cal. App. 3d 72, 81 (Ct. App. 1982) (holding "failure of a practitioner to prescribe or provide necessary medication or treatment ... cannot be characterized as a failure to summon medical care" under the statute.) California courts have also ruled that the obligation to summon immediate medical care codified by Section 845.6 does not also include a duty to properly diagnose or treat a medical condition. *Watson v. California*, 21 Cal. App. 4th 836, 841-42 (Ct. App. 1993) (holding the failure to summon immediate medical care under section 845.6 is not equivalent to the failure to provide adequate care.)

As to the Roxycodone withdrawal incident where Plaintiff blacked out and suffered a contusion to the back of the head that was closed with nine stitches, the SAC alleges that Plaintiff was taken to the UCSD hospital where he stayed for three days. [ECF No. 9 at 10.] Andrade's allegations demonstrate he received immediate medical care in response to the head injury and there are no facts alleged in the SAC that would indicate medical staff failed to take reasonable action to summon care as required under

Section 845.6.

With respect to the "Hibicleanse" poisoning incident, the SAC alleges that after vomiting, Plaintiff was escorted to a medical unit where he was seen by medical staff. [*Id.* at 12.]  Because Andrade alleges he was taken to the medical unit and seen by a L.V.N or R.N., no facts are alleged in the SAC that would state a claim under Section 845.6 for failure to take reasonable action to summon medical care as to Andrade's accidental ingestion of Hibicleanse.  Therefore, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for failing to state a claim under California Government Code § 845.6 be **GRANTED**.

## V.   CONCLUSION

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. section 636(b)(1).  For the reasons set forth above, it is **RECOMMENDED** that:

1) Defendants' Motion to Dismiss for failure to state a claim against Mike Barletta pursuant to FED.R.CIV.P. 12(b)(6) be **GRANTED**;

2) Defendants' Motion to Dismiss for failure to state a claim of municipal liability against the County with respect to the informed consent policy and detoxification policy be **GRANTED**; and

3) Defendants' Motion to Dismiss for failure to state a claim under California Government Code § 845.6 be **GRANTED**.

A *pro se* litigant must be given leave to amend his complaint unless it is absolutely clear the deficiencies of the complaint cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely."  *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir.2000).  Because Plaintiff has twice had the opportunity to amend his claims for deliberate indifference, and cannot cure the deficiencies in his complaint, **IT IS FURTHER RECOMMENDED** that no leave be given to file a third

amended complaint.

**IT IS ORDERED** that no later than **September 8, 2015**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 22, 2015**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

DATED: August 18, 2015

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court