UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN ANDRADE, JR., Booking #1276875,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendant. | Case No.: 3:14-cv-01330-GPC-BGS<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[ECF No. 16] |

Plaintiff Franklin Andrade ("Plaintiff" or "Andrade"), a state prisoner proceeding pro se and *in forma pauperis*, filed a civil rights action pursuant to 42 U.S.C. § 1983. Defendants County of San Diego (also erroneously sued as San Diego County Board of Supervisors, San Diego County Jail Director of Health Services, Facility Administrator of George Bailey Detention) (hereinafter "the County") and Mike Barletta filed a motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") under Federal Rule of Procedure 12(b)(6). (Mot. Dismiss, ECF No. 16.) Pursuant to 28 U.S.C. 6336(b)(1)(A), United States Magistrate Judge Bernard Skomal submitted a Report and Recommendation ("Report") to this Court recommending the Motion to Dismiss be granted without leave to amend. (Report, ECF No. 22.) Judge Skomal required the parties to file objections by September 22, 2015. The parties did not file any objections.

After careful consideration of the SAC and the Motion to Dismiss and for the reasons set forth below, this Court **ADOPTS** Judge Skomal's Report in its entirety and **GRANTS** Defendants' Motion to Dismiss Plaintiff's SAC without leave to amend.

I.  Factual Background

Plaintiff Franklin Andrade is incarcerated at George Bailey Detention Facility. (SAC at 3, ECF No. 9.) Plaintiff alleges that a doctor prescribed him the hydrocodone medication "Norco" approximately six months prior to his incarceration in his SAC. (*Id.* at 6.) Plaintiff suffers from chronic pain due to a ligament severance of the right shoulder. (*Id.* at 4.) The prior attending physician fully informed Plaintiff of the risks associated with Norco and Plaintiff did not experience any ill effects from the drug. (*Id.*)

In October of 2013, a female attending physician at George Bailey told Andrade he could no longer receive Norco. (*Id.* at 4.) The physician instead prescribed "Roxycodone," a drug which Andrade was unfamiliar with. (*Id.* at 5.) Andrade alleges the doctor did not inform him the drug could cause opioid dependency or any of the side effects. (*Id.* at 4.) Plaintiff also contends that he did not receive "informed consent' in violation of San Diego County guidelines and policies set forth in Title 15 § 1214. (*Id.* at 5.)

After two weeks Plaintiff noticed that Roxycodone's effects wore off in a short period of time after ingestion and did not last after midnight. (*Id.* at 4.) An unnamed attending physician increased Andrade's dosage to 3 times daily, distributed at 9:00 a.m., 1:00 p.m., and 7:30 pm. (*Id.* at 8.) Andrade requested that the 1:00 p.m. distribution be moved to 2:30 a.m., but his request was denied.

On January 19, 2014, Andrade alleges that unidentified nurses in the housing unit to which he was assigned stopped dispensing medication to him. (*Id.* at 8.) Andrade alleges that "even though Plaintiff was not a heroin user suffering heroin withdrawls, morphine based and opioid [sic] based products are in a similar family of narcotics [as Roxycodone]"; therefore "medical staff failed to follow their own guidelines concerning [the inmate] detoxification treatment policy" because they stopped administering

Roxycodone without warning and failed to develop a detoxification program such as "weaning" or to transfer him to a licensed medical facility under Title 15, (minimum jail standards) § 1213.  (*Id*. at 7.)

From January 19, 2014 to January 20, 2014, Andrade submitted written and verbal complaints to alert prison staff that once the Roxycodone medication was stopped (on January 19, 2014), he began to feel severely ill.  (*Id*. at 8.)  On January 21, 2014, Andrade woke up sick, was unable to eat breakfast, had coughs and sweats, and had chills upon standing up.  (*Id*.)  He then blacked-out, fell backwards, and suffered a concussion and contusion to the back of his head.  (*Id*.)  Andrade's head wound was closed with nine stitches, and he was admitted to the UCSD hospital for three days.  (*Id*. at 8-10.)

On January 28, 2014, Andrade was transferred from the Medical Unit at George Bailey Detention Facility to General Population.  (*Id*. at 10.)  At 9:00 a.m., Andrade lined up to receive medication and was given a pre-measured dosage of a red liquid.  (*Id*.)  Due to its similarities in appearance to Robitussin cough syrup, which Andrade had been previously prescribed, he mistook the red liquid for cough syrup and swallowed it.  (*Id*.)  The liquid, later discovered by Andrade to be an antiseptic called "Hibicleanse," burned his throat and caused him to vomit.  (*Id*. at 11-13.)  Andrade was escorted to a medical unit and placed into a holding cell for five hours, and was told by the attending nurse to keep vomiting.  (*Id*. at 12.)  Andrade stated that no medical staff remained to supervise, and he was later escorted back to General Population by a custody officer.  (*Id*.)

On January 29, 2014, Andrade was escorted into an examination room for a follow-up examination with the attending physician.  (*Id*. at 12.)  Andrade alleges that the nurse who took his vitals was amused by his sickness and situation, made comments about how the Hibicleanse tasted, and made Andrade feel that he "made the stupid decision of injuring [himself]."  (*Id*. at 12-13.)  Andrade further alleges that the attending physician also added joking remarks and asked him demeaning questions.  (*Id*. at 13.)  When Andrade asked "what's so "explentive" (sic) funny?" the attending physician told the custody sheriff to take Andrade back to his cell without further treatment.  (*Id*. at 13.)

Andrade stated that, at that moment, he was still suffering from the burning sensation in his throat, unable to eat or swallow without pain, and was still nauseous and suffering from the effects of the concussion. (*Id*. at 13.)

## II.     Procedural Background

Plaintiff filed his original Complaint on May 29, 2014. (Compl., ECF No. 1.) On June 9, 2014 the Court dismissed his complaint for failure to state a claim. The Court's order stated:

> First, to the extent Plaintiff alleges that the "San Diego County Sheriff's Department," and the "San Diego Sheriff's Department Medical Service" have violated his constitutional rights, his Complaint fails to state a claim because these entities are not "persons" subject to suit under § 1983. Neither a local law enforcement department (like the San Diego County Sheriff's Office), a jail (like the San Diego County Jail), or a state agency (like the California Department of Corrections), are proper defendants under § 1983. *See Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality.") (Citation omitted); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993) ("Section 1983 imposes liability on any 'person' who violates someone's constitutional rights 'under color of law.' Cook County Jail is not a 'person.');
>
> As currently pleaded, Plaintiff's Complaint fails to state a claim under 28 U.S.C. § 915A(b) because he has failed to allege any facts which "might plausibly suggest" that either the County itself, or any *individual* County employee (a "person"), like Sheriff Gore, violated his constitutional rights. *See Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)'s pleading standards to *Monell* claims); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (42 U.S.C. § 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of plaintiff's constitutionally protected rights).

(Mot. Dismiss Compl. Order at 3-5, ECF No. 3.)

The Court gave Andrade leave to file a First Amended Complaint ("FAC"). (*Id*. at 7.) Plaintiff filed his FAC on July 8, 2014 (ECF No. 4.), which the Court again dismissed on August 6, 2014 for failure to state a claim with leave to amend (ECF No. 5). The Court stated in its order;

> As currently pleaded, Plaintiff's First Amended Complaint fails to state a claim under 28 U.S.C. § 1915A(b) because he has failed to allege any facts which "might plausibly suggest" that the County violated his constitutional rights. *See Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)'s pleading standards to *Monell* claims); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th

> Cir. 1978) (42 U.S.C. § 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of plaintiff's constitutionally protected rights). Here, there are no allegations that any individual Defendant was acting in accordance with a County policy, procedure or custom. *Monell*, 436 U.S. at 690.
>
> Here, Plaintiff only alleges facts that show a difference of opinion between himself and unnamed medical staff regarding the course of his medical treatment. Prior to his incarceration, Plaintiff received a medication that the medical jail staff informed him they could not provide. (*See* FAC at 3-4.) Instead, Plaintiff was prescribed a different pain medication. (*Id.* at 4.) A mere difference of opinion between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).
>
> To the extent that Plaintiff claims he was left alone in his cell after becoming ill and "laughed at by medical staff," he may have a deliberate indifference to a serious medical need claim. However, the Court cannot direct service of this claim at this time because Plaintiff's pleading is completely devoid of any description or identifying factors necessary to effect service on an individual defendant. Moreover, Plaintiff has not named any individuals as Defendants in this matter. Thus, if Plaintiff wishes to proceed with this claim, he must file an amended pleading that provides an adequate description of these individuals whom he claims were deliberately indifferent to his serious medical needs. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant.")."

(*Id.* at 2-6.)

On October 27, 2014, Andrade filed the SAC. (ECF No. 9.) Defendants filed a motion to dismiss on March 30, 2015. (ECF No. 16.) Judge Skomal issued a Report and Recommendation on August 8, 2015. (ECF No. 22.) Judge Skomal recommended the SAC be dismissed without leave to amend.

**III.  Legal Standards**

    **A.  FED. R. CIV. P. 12(b)(6) Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547(2007). A claim that is facially plausible when factual allegations permit "the court to draw the reasonable inference that the defendant is responsible for the misconduct alleged." *Id.* In other words, "the nonconclusory content,' and reasonable

inferences from the content, must be plausibly suggestive of a claim entitling plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 566 U.S. at 668.

In addition to the liberal pleading standards set out in Rule 8, a document filed *pro se* is "to be liberally construed." *Erickson v. Pardus*, 511 U.S. 89, 94 (2007). When the plaintiff is appearing *pro se*, the court affords the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2001); *Karim Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). *Pro se* litigants "must be ensured meaningful access to the courts." *Rand v. Roland*, 154 F.3d 952, 957 (9th Cir. 1986). ("*Pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record . . . it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant"). And, in giving liberal interpretation to a *pro se* complaint, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey,* 673 F.2d at 268. As with pleadings drafted by lawyers, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Min. Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).

**B.     Report & Recommendation 28 U.S.C. § 636(b)(1) Review Standard**

The district court's role in reviewing a Magistrate Judge's report and recommendation is set forth in 28 U.S.C. § 636(b)(1). Under this statute, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1). When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. United States Dist. Court,* 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215,

1217 (S.D. Cal. 2001). Under such circumstances, the Ninth Circuit has held that "a failure to file objections only relieves the trial court of its burden to give de novo review to factual findings; conclusions of law must still be reviewed de novo." *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989) (citing *Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983)).

**IV.  Discussion**

  **A.  Deliberate Indifference to Serious Medical Needs**

There are two elements to deliberate indifference. First, the plaintiff must show a serious medical need such that failure to treat a prisoner's condition could result in further significant injury or unnecessary or wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97 (1976). Defendant's motion to dismiss does not dispute Plaintiff can meet this element. (Mot. to Dismiss at 4:25, ECF No. 16.)

Second, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff must plead enough factual matter to show that each Defendant acted with deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The plaintiff satisfies this element when they can show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.*

Finally, "the indifference to [a prisoner's] medical needs must be substantial." *Gamble*, 429 U.S. at 105. Defendant's conduct must amount to more than indifference, negligence, or medical malpractice. *Id.*

  **1.  Defendant Mike Barletta**

Defendant Barletta argues that dismissal is warranted because Andrade's allegations fail to state a cognizable claim for deliberate indifference. The allegations in the SAC against Defendant Barletta, in their entirety, are as follows: "Barletta . . . is employed as a Director of Health Services Authority . . . this defendant . . . flagrantly [sic] disregard of State law and San Diego County law and regulations, regarding "informed consent" of "Legend Drugs", policy. Improperly supervising custodial

medical staff." (SAC at 2.)

A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986).

The SAC fails to identify any acts showing Defendant Barletta knew of, and thereafter affirmatively disregarded, an excessive risk to Andrade's health or safety. The SAC merely makes conclusory allegations that Defendant Barletta is the Director of Health Services Authority and "flagrantly [sic] disregard of state law and San Diego County law, regarding 'informed consent' of 'Legend Drugs' policy. Improperly supervising custodial medical staff." (SAC at 2.) Such general allegations however, fail to state any facts from which the Court could infer that Barletta was personally involved or connected in some way to the decision to not give informed consent, stop providing Roxycodone or to the administering of Hibicleanse to Andrade. *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir 2004).

Plaintiff also sues Barletta in his official capacity as a supervisor in his role as Director of Health Services Authority. (SAC at 2.) However, *respondeat superior* liability is not available in 42 U.S.C. § 1983 causes of action. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). A plaintiff can state a claim against a supervisor in their official capacity only if 1) the defendant personally acted in the constitutional deprivation or "2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional deprivation [exists]." *Starr v. Baca*, 652 F.3d 1207 (9th

Cir. 2011). Plaintiff can show a causal connection if they allege facts which show the defendant knew or should have known of an unconstitutional practice by the employees but failed to stop the acts. *Chavez v. U.S.*, 683 F.3d 1102, 1110–11 (9th Cir. 2012); *Starr*, 652 F.3d at 1207–08.

Plaintiff's SAC fails to allege sufficient facts which give rise to a cause of action against Defendant Barletta in his official capacity. The SAC does not assert that Barletta knew that an unidentified physician failed to give Andrade informed consent about the switch from Norco or Roxycodone, an unnamed nurse decided to abruptly stop administration of Roxycodone, or an unnamed prison member administered Hibicleanse to the defendant. Barletta cannot merely serve as a stand-in for the unknown defendants; he must have directed or condoned the unknown staff's actions in some way.

Because Plaintiff's SAC fails to allege facts showing that Barletta 1) affirmatively acted with deliberate indifference or 2) knew or should have known of an unconstitutional practice by employees but failed to stop the acts, Defendant Barletta's Motion to Dismiss Plaintiff's SAC for failure to state a claim as to Defendant Barletta is **GRANTED**.

### 2. The County of San Diego

Andrade asserts a claim of deliberate indifference against the County of San Diego under the theory of municipal liability. Counties can be held liable under section 1983 for violations of constitutional rights resulting from the county's policies or customs. *Monell*, 436 U.S. at 691–93. Specifically, a plaintiff must show 1) he was deprived of a constitutional right; 2) the municipality had a policy; 3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and 4) the policy is the "moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006). "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury," and the plaintiff must establish "that the injury would have been avoided had proper policies been implemented." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1190

(9th Cir. 2006).

Plaintiff alleges that the County employee's failure to follow certain policies gives rise to liability under section 1983. The first policy named in the complaint is, "Title 15, division 1, subchapter 4, minimum standards for local detention facilities, regarding 'Informed Consent' of 'Legend Drugs.'" (SAC at 3.) The SAC fails to state a claim because Andrade's allegations do not assert an official policy is responsible for his injuries. Rather, Plaintiff alleges the failure of unnamed staff's to follow the policy caused his injuries. (*Id.* at 5.) Andrade's allegations do not stem from the policy itself, but from the failure of unnamed medical staff to provide him with informed consent of the dangers of Roxycodone in accordance with the policy. (*Id.*) Although the Court has asked Andrade to identify the person's responsible for the deliberate indifference, the SAC fails to do so. (Mot. to Dismiss Order at 4:4–12.) Therefore, the County's Motion to Dismiss for failure to state a claim in regard to the informed consent policy is **GRANTED.**

Andrade's allegation that the medical staff failed to follow the inmate detoxification guidelines also fails to state a claim. Again, Andrade's SAC takes issue with the staff's failure to follow the County's inmate detoxification guidelines; not with the detoxification policy itself. (*See, e.g.,* SAC at 7, "even with the serious medical need indifference, San Diego County Jail medical staff failed to follow their own guide-lines concerning [inmate] detoxification policy.") Municipal liability only occurs from a policy of the municipality, not from an individual act. *Monell*, 436 U.S. at 690. Therefore, the County's Motion to Dismiss for failure to state a claim in regard to the inmate detoxification policy is **GRANTED.**

### B.    Failure to Provide Medical Care under California Government Code

The County contends that any state law claim Plaintiff attempts to plead must be dismissed because public entities are immune from suit under California Government Code §§ 844.6 and 845.6. (Mot. to Dismiss at 8:9–20, ECF No. 16.) Section 844.6 states "notwithstanding any other provision of this part . . . a public entity is not liable for . . . (2) an injury to any prisoner." Cal. Gov. Code § 844.6. Section 845.6 provides a limited

exception, stating:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by sections 855.8 and 856, a public employee and his public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov. Code § 845.6.  Finally, municipalities are immune from liability under § 855.8, which states: "(a) Neither a public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or addiction or from failing to prescribe for mental illness or addiction."  Cal. Gov. Code. § 855.8(a).

Section 845.6 only grants an exception for failure to summon immediate medical care.  *Watson v. California*, 21 Cal. App. 4th 836, 841–42 (Ct. App. 1993).  Medical malpractice does not give rise to liability under § 845.6.  *Nelson v. California*, 139 Cal. App. 3d 72, 81 (Ct. App. 1982) (holding that the failure to prescribe or provide the correct medication is not the legal equivalent of a failure to summon medical care under § 845.6.)

In regards to the Roxycodone withdrawal incident where Plaintiff blacked out and suffered a contusion to the back of the head, the SAC alleges that medical staff took Plaintiff to the UCSD hospital where he remained for three days.  (SAC at 10.)  Andrade's own allegations demonstrate that received immediate medical care in satisfaction of § 845.6 and he alleges no facts which suggest medical staff failed to summon the care required under the statute.

With respect to the "Hibicleanse" poisoning incident, the SAC alleges that after vomiting, prison staff escorted Plaintiff to a medical unit where medical staff diagnosed him.  (*Id*. at 12.)  Plaintiff's complaint alleges that either an L.V.N or R.N. examined him; therefore, Plaintiff does now allege sufficient facts in the SAC to state a claim under § 845.6 regarding the Hibicleanse incident.

Finally, Plaintiff alleges the County's failure to provide medical care for

detoxification gives rise to liability under § 845.6.  Plaintiff alleges in the SAC that "[f]rom the time of the medication stoppage, 01-19-2014, to 01-20-2014, Plaintiff informed through written and verbal [complaints] that an unknown cause for severe illness that started when the medication was stopped." (*Id.* at 8.)  However, Andrade never alleges that medical care for his condition was immediately necessary.  While the SAC states that Title 15 requires a jail's detoxification protocol include immediate transfer, relying on a transfer for detoxification brings the County into the immunity granted by Cal. Gov. Code § 855.8.  ((*Id.* at 7.)  At most, Title 15 requires an immediate transfer if an inmate undergoes detoxification; however, the SAC does not allege that Plaintiff alerted medical staff to anything other than an illness.  (*Id.* at 8.)  Medical staff would therefore have had to correctly diagnose Plaintiff of detoxification, making the County immune under § 855.8.  *See* Cal. Gov. Code § 855.5(a).  Therefore, the County's Motion to Dismiss for failure to state a claim under Cal. Gov. Code. § 845.6 is **GRANTED**.

V.   **Conclusion**

For the foregoing reasons, the Court rules:

1) Defendant's Motion to Dismiss for failure to state a claim against Mike Barletta pursuant to FED. R. CIV. P. 12(b)(6) is **GRANTED**;

2) Defendant's Motion to Dismiss for failure to state a claim of municipal liability against the County with respect to the informed consent policy and detoxification policy is **GRANTED**;

3) Defendant's Motion to Dismiss for failure to state a claim under California Government Code § 845.6 is **GRANTED**.

A *pro se* litigant must be given leave to amend his complaint unless it is absolutely clear the deficiencies of the complaint cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are

1 | not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*,
2 | 203 F.3d 1122, 1129 (9th Cir.2000).  Because Plaintiff has twice had the opportunity to
3 | amend his claims for deliberate indifference, and cannot cure the deficiencies in his
4 | complaint, the Court **GRANTS** Defendants' Motion to Dismiss **WITH PREJUDICE**.

IT IS SO ORDERED.

Dated:  February 25, 2016

Hon. Gonzalo P. Curiel
United States District Judge